WILLIAMS v. CRAIG.

---

This Court has concurrent jurisdiction to compel contribution, in regard to a public assessment, as between the owner of the fee and his tenant holding part, who covenants to pay assessments but whose name does not appear on the commissioners report.

W. leased lots of land in New York to C. The latter covenanted to pay taxes, rates burthens, services, works and impositions, &c. which might be imposed or ordered to be done, &c. W. (the landlord) was owner of a larger adjacent range of lots. An estimate and assessment took place during the term for opening a public square. A part of W's land (not leased) was required for the purpose, while a larger part, including the leased lots was not wanted. The commissioners, in estimating benefit and advantage, had calculated the lots of W. separately and ascertained the benefit to him, by reason of his interest in the lots not taken above the loss for those taken at $3944. The tenant (C's) name did not appear upon the commissioners proceedings or documents. Their report was made up by the corporation-counsel, in the aggregate of benefit over excess and not in detail agreeably to the commissioners calculations while the benefit to the premises under lease was assessed by the commissioners in their calculations, with the rest, against W. at $1265. W. filed a bill against C. for contribution. A general demurrer was interposed; which was overruled and an intimation given that the tenant might be held liable to contribute towards the $3944. , but that the complainant would not be allowed to go out of the commissioners report and consequently might not to go into parol proof, but must rest on the report.

---

On the first day of February one thousand eight hundred and twenty five, the complainant demised and leased to the defendant Samuel D. Craig two lots of ground in the twelfth ward of the city of New York, for the term of twenty one years, at the annual rent of thirty dollars— subject to renewal or to pay for the improvements. The defendant covenanted in the lease "to pay, bear and sustain, execute and perform all such taxes, rates, burthens, services, works and impositions whatever, whether ordinary or extraordinary, that might be assessed, laid, imposed or legally ordered to be done, paid, executed or performed thereupon in respect to or by reason of the said premises or any part thereof, whether by reason of any existing law or ordinance or any that might thereafter pass."

The demised premises were a part of a larger tract of about three hundred lots, all of which belonged to the complainant. During the continuance of the term and about the

*April 15.*
1834.

*Jurisdiction.*
*Assessment.*
*Contribution*

twentieth day of April one thousand eight hundred and thirty two, the corporation of the city of New York resolved to open *Union Place*; and for this purpose, procured the appointment of commissioners of estimate and assessment in the usual manner. The commissioners proceeded in the discharge of their duty and made their report, bearing date the sixteenth day of March one thousand eight hundred and thirty three, and deposited a copy thereof in the proper clerk's office for the inspection of whomsoever it might concern; and gave notice thereof by public advertisement and that the report would be presented for confirmation to the Supreme Court on the fourth day of April then next following. When the time arrived, the commissioners made and signed an additional report to the court, stating that certain objections, papers and documents annexed and none other had been presented to them against their estimate and assessment and that they had reconsidered the report, but were of opinion it did not require any correction, alteration or addition.

On the fourth day of April one thousand eight hundred and thirty three, the report was duly confirmed by the Supreme Court.

In it three several pieces of land, described in the proceedings and belonging to the complainant, were required for the purpose of opening Union Place; and fourteen adjacent pieces of land, which were therein reported to belong to the complainant, were mentioned as not being wanted for the purpose, being about two hundred and sixty six lots in number (as numbered by the commissioners in their calculations upon their benefit map, as well as in the report.) The commissioners estimated the benefit and advantage to the complainant from such opening of Union Place, by reason of his interest in the adjacent lots and parcels of land not required to be taken for the purpose, over and above his loss and damage in consequence of relinquishing his interest in the parcels to be taken, at the sum of three thousand nine hundred and forty four dollars; and, in making their calculations for the said estimate of benefit and advantage, they did not make the same upon the lots of the complainant together, as ascertained in their official report, but did so in refer-

ence to every distinct lot, piece or parcel of land assessed for the benefit arising from the improvement which was comprehended within the range of such assessment. Their report was drawn up from such calculation by the counsel for the corporation, not in detail agreeably to the calculations, but in the aggregate of the excess of loss over benefit or benefit over loss in reference to each individual interested in lands benefitted by as well as taken for improvement. In consequence of this, the benefit assessed upon the premises leased to the defendant was assessed upon the complainant in connection with his other property in the vicinity and was deducted from the damages which would otherwise have been allowed to the complainant in respect to the lands taken from him for the purpose of the improvement; while his interest in such lands was supposed to be reasonably worth and his damages for taking the same were estimated and valued by the commissioners, in their calculation, at fifty four thousand and nine hundred dollars, and the assessments of benefit upon his adjacent lots were estimated at various sums according to the size of the lots and their contiguity to Union Place; and on the lots leased to the defendant, the benefit was estimated by the commissioners, in their calculation, at twelve hundred and sixty five dollars—the lots being marked on their benefit map as belonging to the complainant but the whole assessment of benefit thereon was assessed upon the complainant and no assessment of benefit was made upon the defendant in reference to the premises held by him under the lease which were comprehended in and formed a part of one of the benefitted parcels of land belonging to the complainant not required for the improvement. The twelve hundred and sixty five dollars, so assessed upon the complainant for benefit in respect to the premises so under lease to the defendant, added to the other assessments of benefit upon the complainants, amounted, in the whole, to the aggregate benefit sum of fifty eight thousand nine hundred and forty three dollars, from which amount the counsel, in preparing the report, deducted the fifty four thousand and nine hundred dollars allowed for damage and only set forth, in the report, the excess of benefit over damage upon the complainant at three thousand

1834.

WILLIAMS
*v.*
CRAIG.

nine hundred and forty four dollars—whereas (as was al-
leged in the bill) if the official report had been made out in
detail, agreeably to the calculations of the commissioners,
the leasehold lots of the defendant would have been charged
with the twelve hundred and sixty five dollars and which the
defendant would have been bound to pay.

The bill in this cause set forth the above facts ; and then
suggested that, as the complainant was advised, the defend-
ant's liability could not be enforced in a court of law—at all
events, not beyond a proportional contribution towards pay-
ment of the three thousand nine hundred and forty four dol-
lars—and that his liability, even then and to this extent,
was doubtful ; insisting, however, that by virtue of the cov-
enant in the lease, the defendant was bound in equity to pay
the whole sum of twelve hundred and sixty five dollars, as
being the proportional part of the whole amount of damages
for opening Union Place fairly chargeable upon the premi-
ses.    It prayed, that the twelve hundred and sixty five dol-
lars might be decreed to be a charge upon the leasehold estate,
with interest from the time of the confirmation of the com-
missioners' report ; and the defendant be decreed to pay the
same or, in default thereof, that his leasehold estate might be
sold for the payment, with interest and costs.

The defendant interposed a general demurrer ; and took
the broad ground of the remedy, if any, being at law upon
his covenant ; and that this court had no jurisdiction of the
case or, if it had, there was no equity in the bill to entitle
the complainant to relief.

Mr. *Craig* in *pro. per.*, in support of the demurrer.

Mr. *Ulshoeffer* for the complainant.

*October* 13.     THE VICE-CHANCELLOR :—It is not disputed in this case
that the covenant of the defendant would extend to and cast
upon him the burthen of an assessment for opening Union
Place under the proceedings set forth in the bill, provided
such an assessment had been imposed directly upon the lots
of which he was the lessee.    And it appears to be equally
within his covenant to pay any assessment which might be
made upon these lots in conjunction with other lots by one

general assessment upon a larger tract which should include them (and a part of which general assessment must, by a necessary consequence, attach proportionably to each lot or parcel.) The words of the covenant do not require the assessment to be made upon the defendant by name, either as owner or lessee, nor upon the lots as distinct and separate parcels of land. He is to pay all such taxes, rates, burthens and impositions as may be assessed, laid or imposed in respect to or by reason of the said premises or any part thereof; and the statements in the bill clearly show that an assessment for the opening of Union Place had been laid in respect to and upon the lots—they being, at the same time, parcel of a large number of lots taken collectively and assessed on account of their contiguity to the place opened as a public square. This assessment has been made upon the complainant as the owner in fee of the land lying within a certain range, benefitted by the improvement, and the boundaries and description of which were given so as to include the lots held by the defendant under lease : and although the defendant, as has been before said, is not named and his lots are not designated, yet it is certainly within his covenant to bear a proportion of the common burthen—what, in point of amount, it is or shall be, is not now the question.

The only difficulty, in getting at the amount, is in the admission of parol proof. If the report of the commissioners had specified the amount assessed upon these particular lots, it would have been, after confirmation, conclusive ; and the complainant would only have had to bring his action at law upon the covenant. He could not have entertained his bill, if his remedy at law stood so clear and perfect. But, as other evidence, in addition to the facts furnished by the report of the commissioners, will be necessary—not for the purpose of contradicting or varying the report (as far as it goes) but to ascertain the proportion which the defendant ought to pay and then to compel a contribution by the defendant in virtue of his covenant, I am inclined to think it is a case in which this court has, at least, a concurrent jurisdiction with courts of law. Contribution, in a variety of cases, forms a head of equitable jurisdiction; and it appears to me this is one in which it may be enforced to a certain extent.

The complainant cannot set up any claim inconsistent with the report of the commissioners. No fraud, accident or mistake is alleged as a ground for setting aside the report or reforming it. It was the complainant's own fault that he took no measures to procure the commissioners to distinguish in their report between the amount which they intended to assess or which they deemed chargeable upon the leased lots of the defendant as distinct from the other property; and it is no ground of relief now that he did not discover the error or omission in time to make objections to the report or that he was ignorant of the necessity of laying the lease before the commissioners. With ordinary diligence, he might have avoided all the difficulty which, out of this omission, he may now have to encounter. His own remissness and ignorance, when not the result of accident or mistake, misrepresentation or fraud, will not avail him: *Penny* v. *Martin,* 4. J. C. R. 566.

It appears to be well settled that no parol evidence can be received for the purpose of contradicting the report in respect to sums awarded or to show that the commissioners intended differently from what they may have expressed: *Turner* v. *Williams,* 10. Wend. 139.; and I think it is extremely doubtful whether the complainant, in the present case, can be permitted to travel beyond the report and show, by extrinsic evidence, such as the arithmetical calculations of the commissioners and their marks upon the map, that twelve hundred and sixty five dollars would have been assessed upon the lots for benefit, if the commissioners had made the assessment in detail and not in the aggregate. The defendant may well say he is not to be charged with this specific sum: because he has had no opportunity of objecting to it—and also that if it had appeared in the report, he might, perhaps, have succeeded in showing the amount to have been exorbitant and out of proportion compared with assessments upon other lots—or that the value of property required for the improvement which this, with other assessments, was intended to compensate, was estimated too highly. There is, to my mind, great force in all this; and it shows, in as strong light—as in the case of

*Turner* v. *Williams*—the impropriety of admitting parol evidence.

Without passing definitively upon the subject at present— the same argument does not hold good in respect to the three thousand nine hundred and forty four dollars which was actually ·assessed, as appears by the face of the report. The defendant, although not named as the lessee or owner, seeing, as he might have done, that the latter sum was assessed for benefit to property which included the lots leased to him, was at liberty to object as a party interested; and his objections, if any had been made, must have been attended to. It does not appear to me inconsistent with the report to hold the defendant liable to contribute to the payment of this sum ; nor subject to the same objection in relation to the admissibility of parol proof. It comes somewhat within the case of *Astor* v. *Miller*, 2. Paige's C. R. 69. and, on appeal, 5. Wend. 603., where the court entertained jurisdiction for the purpose of adjusting the rights of parties in relation to sums awarded and assessed under a similar proceeding.

At all events, I think there is enough, upon the principle of enforcing contribution, to give this court jurisdiction and put the defendant upon answering the bill.

The demurrer must, therefore, be overruled with costs.